MILTON, executrix, *et al. v.* MILTON.

No. 13823. SEPTEMBER 9, 1941. REHEARING DENIED SEPTEMBER 26, 1941.

*Hammond, Kennedy & Yow* and *W. Wright Abbot,* for plaintiff in error. *M. C. Barwick,* contra.

REID, Chief Justice. There are two exceptions in the record: (1) to the overruling of demurrer to the petition; (2) to the refusal to grant a new trial, verdict having been rendered in favor of the plaintiff. Since, under the rulings about to be made, it is held that the demurrer should have been sustained, it will not be necessary to refer to the evidence given at the trial, or to the grounds of the motion for a new trial.

The action was brought by C. E. Milton against Mrs. Mozelle Milton individually and as executrix of J. J. Milton, her husband, who was the father of the plaintiff and of Mrs. Milton's two daughters, who were also half-sisters of the plaintiff.

The substance of the petition, which is to be construed most strongly against the plaintiff, is as follows:

The plaintiff is the son of J. J. Milton by a former wife. In 1908 the plaintiff's father came to him and stated that he wanted to make a partial distribution of the lands he owned, especially for the reason that money coming from the plaintiff's mother had gone into the real estate he owned. He proposed to the plaintiff that he would cut off a particular portion of his land and let plaintiff go into possession of it as his own, if plaintiff would accept the same, go into the possession of it and improve it.

The plaintiff's father had a sixty-acre tract, described in the petition, surveyed and marked off and had a plat made which he retained in his possession till his death.

Plaintiff, being unable to make improvements on the tract as quickly as seemed desirable, arranged with his father to use some timber from other lands of the latter to build a residence for the plaintiff. It was arranged, "as a part of the gift above described," that plaintiff was to pay his father as rental three bales of cotton per year till 1916, and thereafter so long as his father lived two bales of cotton; his father to pay the taxes.

Plaintiff entered upon the land "upon faith of the gift," and "relying upon such gift erected a dwelling-house costing a thousand dollars and certain other improvements costing five hundred dollars."

In 1919 plaintiff and his father agreed to give for a school a parcel of land, half of which was to be from the tract referred to in the petition and half from an adjacent tract of his father's. His father made the deed to the parcel to the school trustees, but the school had been abandoned and the title to it had reverted. A copy of the deed is attached as an exhibit. It refers to the parcel conveyed as being cut off from the lands of J. J. Milton, plaintiff's father, but described it as being bounded on the east by "lands of J. J. Milton, which he expects to deed to his son, C. E. Milton." The reversion is to J. J. Milton. Accompanying the deed is a county surveyor's plat showing a rectangular tract divided through the center by a line marked "Old Division Line," and with the name outside one of the sides, "J. J. Milton," and the name "C. E. Milton" outside the other side.

Plaintiff's father constantly promised to make him a written conveyance until 1932 when his father and he had a disagreement. As a result of this disagreement, his father deeded this land to the defendants on February 8, 1932, and caused the deed to be recorded. The deed was to a larger tract which included the tract in question, and under it the grantor reserved a life-estate to himself.

In 1929 plaintiff's father had made a will, which has been probated, under which he gave each of his children fifty dollars and gave the residue of his estate to his wife, one of the defendants.

The defendant, Mrs. Milton, has requested him to sign a rent note payable to her.

Plaintiff "has complied with all the terms of the gift herein alleged, has made valuable improvements on the land as shown herein, and it would be a fraud upon petitioner's rights not to grant him specific performance as against all of the defendants."

The prayers are that plaintiff have specific performance of the gift herein alleged, declaring the land claimed by him to be his, and a prayer for general relief.

■ Manifestly the plaintiff was attempting to allege a right to specific performance under the provisions of the Code, § 37-804, in which a familiar principle of equity jurisprudence is codified as follows: "Specific performance will not be decreed of a voluntary agreement or mere gratuitous promise. If, however, possession of lands has been given under such agreement, upon a meritorious consideration, and valuable improvements made upon the faith thereof, equity will decree the performance thereof."

Where the alleged promise to give land is in parol, the plaintiff, in such a case, has the burden of showing definitely by his allegations: (1) the promise to give; (2) a meritorious consideration; (3) an entry by him into possession in pursuance of the gift; and (4) that on faith thereof he made valuable improvements. Of course the land involved must also be sufficiently described. *Holland* v. *Atkinson*, 112 *Ga.* 346 (37 S. E. 380).

In this case the natural love and affection of a father for his son supplies the element of meritorious consideration. *Payne* v. *Thebault*, 180 *Ga.* 758 (4) (180 S. E. 725). If the sufficiency of the allegations as to the promise to give and as to the making of improvements on faith thereof be conceded, still the element of entry into possession is, when legal principles are applied, lacking.

■ The plaintiff's alleged possession was not his possession in law, but was the possession of his father. His entry was under a contract of rental for and during the term of the father's life. The tenant's occupation of the premises is in law the "possession of the landlord." Powell on Actions for Land, § 368, n. 4; Id. § 292, n. 3 and 4; Id. § 358.

There is no allegation in the petition that the plaintiff remained in possession till the time of his father's death, but if there were such an allegation it would not help the plaintiff's case. Having

entered as a tenant, he could not cease to be a tenant, without delivering the possession back to his father as his landlord, or, if held till after his father's death, delivering it back to his father's executor or vendee. Powell on Actions for Land, § 370.

The petition is not as definite and unequivocal as it should be, since much strictness of pleading is required of one seeking specific performance of an oral agreement relating to land; but as it is plain that the relation of landlord and tenant was to exist between the plaintiff and his father so long as the latter should live, the petition must be construed as alleging a promise to give an estate in remainder with prior life estate retained in his father.

■ Even if it should be conceded that Code § 85-705, which provides that "estates in remainder may not be created by parol," is not as categorical as it purports to be, still we are not aware of any exception to it which would be applicable in this case. Possibly a parol sale of a remainder, fully executed in all respects except for the delivery of the deed, would give the purchaser a perfect equity under Code § 20-402; but the plaintiff does not allege any transaction of purchase and sale.

Boiled down, what we have here is at most an oral contract of rental between father and son, with a promise on the part of the father to give the land to his son after the father's death. The statement found in the schoolhouse deed, which the father executed pending the tenancy and which refers to the land in question as "the lands of J. J. Milton (the father) which he expects to deed to his son, C. E. Milton," is not even a promise; it rather evidences a mere intention, and does disclose that the father still claimed the title to the land even at that late date (1919).

The plaintiff relied on, and the learned trial judge manifestly undertook to follow, two previous cases, in which he was also the trial judge, *Usry* v. *Cato,* 168 *Ga.* 240 (supra), and *Milton* v. *Milton* (between the same plaintiff and his father as to another tract of land), 174 *Ga.* 92 (supra). However, neither of these cases is on all fours with this case, nor do they basically involve the same questions. In *Usry* v. *Cato,* while the transaction between the parties was sometimes referred to as a gift, yet the evidence disclosed that the promise was not a gratuitous promise. The written contract, as well as the testimony of the person against whom the promise was enforced, disclosed that what was nominally a contract

of rental was in fact a contract whereby the plaintiff's intestate agreed to pay so much a year as rental until a fixed sum had been aggregated, when he was to have the land. The agreement to pay this sum was a sufficient consideration to keep the transaction from being what is called a voluntary transaction. An executory contract for the purchase and sale of property does not create the relation of landlord and tenant, though the instalment payments are called rent instead of purchase-money. The substance and legal effect of the transaction is what counts. In such a context, though the word "give" may be used, the transaction will not be treated as a technical gift, but as a sale upon valuable consideration. *Latimer* v. *Bruce,* 151 *Ga.* 305 (106 S. E. 263). The suit was not an equitable action for specific performance, but was a complaint for land with the plaintiff relying upon a perfect equity. Powell on Actions for Land, § 145. In this court the only point elaborated was whether the suit should have been brought by a personal representative instead of heirs at law. No question involved in the case at bar was discussed in that case.

*Milton* v. *Milton,* supra, did involve specific performance under the Code, § 37-804. But there the plaintiff proved every essential element; the gift, the meritorious consideration; the delivery of possession and the making of permanent improvements. It is true that it appeared that the father, the donor, advanced to the donee some of the money with which to pay for some of the improvements, but the donee repaid it. The donee did not hold possession as tenant or in any other subordinate relationship.

■ We are constrained to hold that the present petition is inadequate to present a case for specific performance of a parol promise to give.

In addition to *Holland* v. *Atkinson,* which we have previously cited, supra, our conclusions are supported by the following cases: *Shropshire* v. *Brown,* 45 *Ga.* 175; *Coffey* v. *Cobb,* 140 *Ga.* 661 (79 S. E. 568), s. c. 143 *Ga.* 539 (85 S. E. 693), s. c. 146 *Ga.* 689 (92 S. E. 57), s. c. 148 *Ga.* 101 (95 S. E. 966), s. c. 149 *Ga.* 264 (99 S. E. 864). *Judgment reversed. All the Justices concur.*