The petition stated a cause of action for specific performance of a promise to convey land, under the Code, § 37-804, and the trial court did not err in any of its rulings on the various grounds of demurrer, for the reasons pointed out in the opinion.
 Nos. 16808, 16809. NOVEMBER 14, 1949.
Curtis H. Bryant filed his petition in the Superior Court of Fulton County, against Mrs. Helen Douglas Mankin, Guy Mankin, Dr. Randolph Smith, and Blue Heron Lake Inc., alleging substantially:
Guy Mankin is the husband and Dr. Randolph Smith is the *Page 121 
brother-in-law of the defendant, Mrs. Helen Douglas Mankin. The plaintiff and the defendants own the entire issue of the stock of Blue Heron Lake Inc., a corporation organized under the laws of Georgia. The plaintiff owns 40 shares of stock; Helen Douglas Mankin and Guy Mankin own jointly 40 shares of said stock; and the other defendant, Dr. Randolph Smith, owns 40 shares.
The defendant, Blue Heron Lake Inc., was incorporated on or about August 22, 1941, and the primary purpose and object of said corporation was to provide facilities for the residences, recreation, and health of its stockholders, and pursuant to the powers vested in the corporation, it acquired a large lake and the land surrounding the lake.
(7) The bylaws of said corporation provide: "Real estate owned by the corporation shall be deeded only to a stockholder of the corporation, and when so deeded said property carries with it the restriction that it cannot be resold, leased, or rented without being offered first to each of the other stockholders of the corporation at its reasonable market value at the time the proposed sale, lease, or rent agreement is executed."
(8) At a stockholders' meeting of said corporation, held on September 18, 1942, at which all of the stockholders were present, a resolution was passed authorizing and directing the directors to cause to be conveyed to each of said stockholders a certain tract of the property owned by the corporation, a description of the respective tracts going to each of the stockholders being set out in exhibit "A" to the petition.
(9) Immediately after this stockholders' meeting, the directors, who were the plaintiff and the defendants, the Mankins and Smith, called the directors into session and adopted the resolution of the stockholders authorizing and directing a conveyance of the tracts of land to the stockholders.
(10) The consideration for the said conveyances was the mutual benefits flowing to said stockholders from the said conveyances; the conveyance made to each stockholder was the consideration for the conveyances made to the other stockholders.
(11) Pursuant to said resolution on the part of the stockholders and directors to execute said conveyances, the plaintiff, *Page 122 
in good faith, made valuable improvements in the approximate sum of $3500 on the tract of land which was to be conveyed to him, and in so doing he relied on said resolution of the stockholders and board of directors; and the defendants had full knowledge that these improvements were being made, and acquiesced therein.
(12) The improvements made by plaintiff have greatly enhanced the value of the entire property of the corporation.
(13) The other stockholders, relying on the said resolutions, have constructed temporary or vacation residences upon the tracts authorized by said resolutions to be conveyed to them.
(14) The conveyances were not executed as provided by the said resolutions. The defendants, as majority stockholders and directors, refused to co-operate with the plaintiff in the execution and delivery of the conveyances as authorized by the stockholders and board of directors, and on each occasion when the plaintiff would make demand or request for the execution and delivery of the conveyances, the said defendants would raise the objection that they desired certain changes in the written descriptions of the boundaries of said tracts.
(15) Subsequently, in order to be agreeable, and desiring to co-operate with the said majority stockholders and directors, the plaintiff agreed to certain changes in the boundaries of said tracts; and the descriptions of the tracts as finally amended and adopted at the regular adjourned annual meeting of the stockholders and directors held January 19, 1945, are attached as exhibit "B" and made a part of the petition.
(16) Subsequently to the meetings held on January 19, 1945, the plaintiff, relying upon the agreements adopted at said meetings, made further valuable improvements on the tract of land agreed to be conveyed to him; and the defendants had full knowledge of the improvements and acquiesced therein.
(17) After January 19, 1945, the plaintiff, as president and executive officer of the defendant corporation, made repeated demands of the other officers, to wit, Dr. Randolph Smith as vice-president, Guy Mankin as secretary, and Helen Douglas Mankin as treasurer, to cause Mrs. Mankin, as attorney for the corporation, to prepare said deeds in conformity with the said resolutions as aforesaid; but no deeds were ever prepared and *Page 123 
presented to the plaintiff as president for execution by him as provided by the bylaws.
(18) On March 6, 1945, the defendant, Mrs. Mankin, who is and has been in complete domination of her husband, the defendant, Guy Mankin, and her brother-in-law, Dr. Randolph Smith, in conversation with the plaintiff, stated that the defendant corporation should have and retain title to a small walled-in cove immediately in front of the plaintiff's residence; also a beach surrounding said cove, also a water fountain in said cove, and also portions of a rock garden, all located partially on the tract agreed to be deeded to the plaintiff, and partially on land owned by the plaintiff and acquired from others, and all of which was constructed at the plaintiff's expense and in reliance on the agreements as aforesaid; the said defendants having full knowledge of said improvements and acquiescing therein during the entire construction thereof.
(19) From the attitude of said defendants, the Mankins and Smith, it was apparent to the plaintiff that the said defendants as majority stockholders and directors had planned, schemed, and entered into a combination and agreement among themselves to pursue a course in violation of the property rights of the plaintiff and to defraud him of the valuable improvements he had made on said tract of land in reliance on the aforesaid agreements and resolutions; and the plaintiff, acting under the authority of the aforesaid agreements and resolutions of the stockholders and directors, and under the authority vested in him by the bylaws, filed for record a deed, which had been prepared and executed by him, wherein there was conveyed to him the tract of land as authorized in the aforesaid resolutions, a copy of the deed being attached to the petition as exhibit "C".
(20) The plaintiff has at all times been ready, willing, and anxious, and has repeatedly offered, to execute deeds conveying to the defendants, the Mankins and Smith, their tracts of land in conformity with the resolutions as aforesaid, and the plaintiff did prepare, execute, and mail to the defendant Smith a deed conveying to him the said property agreed upon at said meetings; and the plaintiff has at all times stated to the defendant, Helen Douglas Mankin, that he would, at any time, execute a deed conveying to her and Guy Mankin the tract of land *Page 124 
authorized by said resolutions, provided the said Helen Douglas Mankin would prepare and present a deed in accordance therewith, it being understood by the plaintiff that the said defendant, who is an attorney at law, desired to prepare the said deed; but the defendants have repeatedly insisted on and demanded further changes in the boundaries of the tracts which were authorized to be conveyed by the said resolutions.
(21) Subsequently to the filing for record of the deed set forth as exhibit "C", and on March 28, 1945, the defendants, the Mankins and Smith, without warrant or authority of law, and without being authorized by a resolution of either the stockholders or the directors of said corporation, executed deeds purporting to convey to themselves certain tracts of land of said corporation, which descriptions were not in conformity with the resolutions of the stockholders and directors as aforesaid, and which deeds were signed, "Randolph Smith, Vice-President, Blue Heron Lake Inc.," copies of the descriptions of the tracts so conveyed being attached as exhibit "D".
(22) The deed to the defendant Smith purported to convey to him portions of the lake frontage which were not included in the aforesaid resolutions, and which would bar the plaintiff from land access to the built-in swimming area in said lake reserved for the common use of the stockholders, and upon which approach the plaintiff had constructed at his own expense, with full knowledge and acquiescence of the defendants, a rock and gravel walkway and necessary bridges.
(23) The said defendants, Dr. Randolph Smith and Guy Mankin, also executed a purported deed to the plaintiff, copy of which is attached as exhibit "E", which not only omitted from its boundaries more than one-half of the tract to be deeded to the plaintiff under the aforesaid resolutions, together with the plaintiff's valuable improvements thereon, but also encroached upon property which was already owned by the plaintiff, which he had acquired in previous years from others, and on which is situated his permanent home where he and his family resided prior to the creation of the said corporation; and the said defendants, without the knowledge or consent of the plaintiff, caused the said deed to be recorded in Deed Book 2046 at page 263 of Fulton County records; and the said defendants *Page 125 
thereafter tendered the said deed to the plaintiff, who promptly refused to accept delivery thereof.
(24) Thereafter, on March 29, 1945, the defendant, Randolph Smith, made demand on the plaintiff, as president of the defendant corporation, to call a meeting of the stockholders and directors of the corporation to be held April 7, 1945, for the following purposes: to remove all of the officers from office; to elect new officers; to declare null and void the deed of Blue Heron Lake Inc. to Curtis H. Bryant, set out as exhibit "C"; to authorize the corporation to employ an attorney to take legal proceedings against the plaintiff, and to pay all expenses of said attorney and proceedings from the corporate assets, and to mortgage the property of the corporation for such purposes; to ratify the purported deeds from Smith and Mankin to themselves (exhibit "D"); to ratify the purported deed from Smith and Mankin to Curtis H. Bryant (exhibit "E"); to authorize a resurvey of the corporation's property, to include a survey of plaintiff's privately owned property which was not acquired from the corporation; to pay the expenses of such survey out of the assets of the corporation, and to mortgage the assets of the corporation for such purposes.
(25) The plaintiff in writing requested the secretary, Guy Mankin, to call meeting of the board of directors of said corporation to be held on April 7, 1945, to consider the perfecting, completing, executing, and delivering of deeds conveying to the individual stockholders the building tracts authorized by the stockholders and directors in meetings assembled on January 19, 1945, and sent a copy thereof to each of the directors; but the plaintiff did not receive from the secretary any notice of this call, nor did he receive any other notice whatever from the secretary.
(26) All of the stockholders and directors of the corporation met at the office of the defendant, Helen Douglas Mankin, treasurer of the corporation, in Atlanta, Georgia, at 3 o'clock p. m., on April 7, 1945, which was the time and place of meeting specified in the request for the call of the directors' meeting by plaintiff, as aforesaid.
(27) The plaintiff, acting as president, and pursuant to the authority vested in him by the bylaws of the defendant corporation, *Page 126 
attempted to call the meeting to order for the purpose of considering the subjects contained in his request for call; but the defendants, the Mankins and Smith, refused to come to order when the plaintiff, as president, assumed the chair, and the said defendants organized a purported meeting, and (a) elected Mrs. Mankin chairman, (b) elected Guy Mankin secretary of the meeting, and (c) proceeded to go through a form of what purported to be a ratification of all the acts and doings referred to in the request of the defendant, Randolph Smith, to the plaintiff as president for the call of said meeting, as outlined in paragraph 24 of the petition.
(28) The plaintiff immediately and instantly protested said meetings as called by the defendants as majority stockholders and directors, as being wholly without warrant or authority of law, and as being contrary to the bylaws of the corporation, and further protested each and every act of the defendants at said meeting wherein all things embraced in the request of the defendant Smith, referred to in paragraph 22 [24] of the petition, were purportedly adopted and ratified, including the election of the defendant, Randolph Smith, as president, the election of Guy Mankin as vice-president, and the election of Helen Douglas Mankin as secretary and treasurer.
(29) During said meeting of April 7, 1945, and in the presence of the defendants, the Mankins and Smith, the plaintiff made demands on them and each of them, individually and officially, to redress the wrongs to the plaintiff and the corporation, committed by them as majority stockholders and directors, wherein they had acted in a manner destructive of the property rights of the plaintiff and the corporation; but the defendants refused to correct said wrongs, and continued to pursue a course in their own interest and against the interest of the plaintiff and that of the corporation.
(30) Thereafter, on September 18, 1945, the annual meetings of the stockholders and of the directors of the corporation were held, and at these meetings the said defendants elected the same officers and reiterated their approval and ratification of all the acts complained of by the plaintiff, which they had purportedly ratified at the meetings held April 7, 1945.
(31) At the meetings of September 18, 1945, the plaintiff *Page 127 
again protested the actions of the defendants and sought redress of the wrongs committed against him and the corporation, but the defendants refused to rectify the said wrongs or any of them and continued to pursue the same course.
(32) [Paragraph 32 of the petition made certain allegations with reference to a deed to Guy Mankin, which allegations were subsequently stricken on demurrer; and the exception thereto having been abandoned, these allegations need not be set out.]
(33) On September 18, 1946, another annual meeting of the stockholders and directors was held, at which the same officers above referred to were elected, and the said defendants again reiterated their approval and ratification of all the acts complained of by the plaintiff at the meetings held on April 7, 1945, and September 18, 1945.
(34) At the meeting held September 18, 1946, the plaintiff again protested the actions of the defendants and sought redress of the wrongs committed against him and against the corporation, which was again refused by the defendants; they declaring their purpose and design to retain all benefits which they had awarded to themselves over the protest of the plaintiff.
(35) For many years before the organization of the defendant corporation, plaintiff owned and resided on property fronting the said lake and adjoining property now owned by Blue Heron Lake Inc., which property of the corporation was formerly owned by another named corporation and was known as Dixie Lake No. 1. The plaintiff acquired the right and option to purchase said property, and it was at his invitation that the defendants, the Mankins and Smith, became interested in the project.
(36) At the time the plaintiff invited the defendants to enter the joint venture for acquiring and holding said property, he did so in good faith, and in the belief that they would deal fairly with him, but from the course of conduct pursued by the defendants, the plaintiff charges that they have agreed, confederated, and conspired to form a majority group to act in their own interest and against the interest of the plaintiff and of the corporation.
(37) The deeds referred to and described in paragraph 21 of the petition should be delivered up and canceled for all of the *Page 128 
reasons alleged in the petition, and the court should enter its decree awarding each of the defendants the tract or tracts of land originally agreed upon by the stockholders.
(38) The court should issue its decree of specific performance, awarding to the plaintiff tract 1 of the property, set forth and described in exhibit "B" of this petition, in conformity with the resolution of the stockholders and directors of Blue Heron Lake Inc. of January 19, 1945, and should also enter its decree of specific performance awarding to the defendants, Helen and Guy Mankin, tract 2, and to the defendant, Dr. Randolph Smith, tract 3 of the property described in exhibit "B", in conformity with the aforesaid resolution.
(39) The defendants and each of them should be enjoined and restrained temporarily and permanently from putting into effect any and all of the proposals adopted at the meetings held on April 7, 1945, September 18, 1945, and September 18, 1946, and should be temporarily and permanently restrained and enjoined from transferring, conveying, mortgaging, encumbering, or changing the status of the assets of the defendant corporation until further orders.
(40) A court of equity should completely adjudicate all the rights of the parties herein and settle all differences between said parties and enter its decree accordingly.
The petition prayed:
(a) For process.
(b) That the defendants be enjoined and restrained from putting into effect any and all of the proposals adopted at their meetings of April 7, 1945, September 18, 1945, and September 18, 1946, and from transferring, conveying, mortgaging, encumbering, or changing the status of any of the assets of the defendant corporation until further order of the court.
(c) That the court enter its decree for specific performance, awarding to the plaintiff tract 1 of the property set forth and described in exhibit "B" of the petition.
(d) That it enter its decree for specific performance awarding to the defendants, Helen and Guy Mankin, tract 2; and to the defendant, Dr. Randolph Smith, tract 3 of the properties described in exhibit "B" of the petition.
(e) That the defendants, the Mankins and Smith, be required *Page 129 
to surrender up for cancellation the deeds referred to in paragraph 21 of the petition, and that said deeds be canceled of record by decree of court.
(f) That the court enter its decree, canceling the purported deed from Blue Heron Lake Inc. to Curtis H. Bryant, referred to in paragraph 23 of the petition, which was executed and recorded without the knowledge or consent of and has never been accepted by the plaintiff.
(g) For relief not now pertinent to the case; and
(h) For general relief.
To this petition the defendants demurred upon the grounds:
(1) That the petition set forth no cause of action either in law or equity.
(2) Specially, on the ground that the petition is duplicitous and multifarious because it joins in one count and in one petition an alleged cause of action against the individual defendants for conspiracy to defraud, and an alleged cause of action for specific performance against the defendant corporation.
(3) Specially, on the ground that the petition is duplicitous and multifarious in that it joins in one count and in one petition an alleged cause of action against the corporation and individual defendants with respect to the group of conveyances of property described in paragraph 21, and an alleged cause of action with respect to the conveyance of property described in paragraph 32 and in paragraph 19; each of said alleged conveyances in said paragraphs, respectively, conveying distinct pieces of property, and there being no allegations creating a nexus between said alleged separate conveyances.
(4) Specially, that the petition is duplicitous and multifarious because it joins in one count and in one petition an alleged cause of action against individual defendants with respect to the cancellation of one set of deeds, and an alleged cause of action for specific performance against the corporation defendant with respect to another set of deeds.
(5) Generally, on the ground that there is no allegation in the petition that the individual defendants as majority stockholders of the corporation did not have authority under the charter or bylaws of the corporation, or other corporate authority, to *Page 130 
cause the corporation to do the very acts complained of in the petition.
(6) Generally, that the petition shows on its face that the petitioner took part in the corporate proceedings voiding the deed executed by him and authorizing the deeds executed to the defendants, and has thereby waived any right to complain of said corporate action.
(7) Specially, to paragraph 7 of the petition, on the ground that the same is immaterial and irrelevant in that said bylaw has application to sales or leases to outsiders, whereas no sale or lease to an outsider in violation of this bylaw is complained of in the petition.
(8) Specially, to paragraph 9 and the petition, on the ground that the consideration for said alleged conveyances is not set forth clearly and distinctly in said paragraph or in the petition.
(9) Generally, to paragraph 9 and the petition, on the ground that the consideration for said alleged conveyances is not set forth clearly and distinctly in said paragraph or in the petition.
(10) Specially, to paragraph 10, on the ground that the allegations of said paragraph are immaterial and irrelevant in that the consideration for said alleged conveyances from the defendant corporation are not valid considerations, and said conveyances were therefore without valid consideration.
(11) Specially, to the words "said agreement" in specified portions of paragraphs 10, 11, 13, and 14 of the petition, on the ground that said words are conclusions, and the terms, date, and place of said alleged agreement are nowhere set forth in the said petition; and specially, to paragraphs 11 and 12, on the ground that said alleged valuable improvements and the date and the alleged value of each of same are nowhere itemized or specified.
(12) Specially, to paragraph 14, on the ground that the time and place of the demands or requests for conveyances are nowhere set forth.
(13) Specially, to paragraph 14, on the ground that the alleged "certain changes in the boundaries of lands or in the written descriptions of the boundaries," and each of said changes and the date thereof are not set forth.
(14) Specially, to paragraph 16, on the ground that said further valuable improvements and the date and value of each are nowhere itemized and specified. *Page 131 
(15) Specially, to paragraph 17, in that the dates and place of said demands are not itemized and specified.
(16) Specially, to that part of the first sentence of paragraph 19 down to the semicolon, on the ground that same does not contain an allegation of a material or relevant fact in that what was apparent to the plaintiff is irrelevant and immaterial.
(17) Specially, to that part of the first sentence of paragraph 19 down to the semicolon, on the ground that same is a conclusion and without facts to support same in that no allegations of fraud are contained in the petition.
(18) Specially, to that part of the first sentence of paragraph 19 down to the semicolon, on the ground that same is immaterial and irrelevant when alleged as an excuse or reason why the petitioner executed said deed, copy of which is marked exhibit "C" and attached to the petition. Said reason or excuse is immaterial and irrelevant, and the only relevant fact with respect to said deed is whether or not the petitioner had authority from the corporation to execute said deed.
(19) Specially, to that part of the first sentence of paragraph 19 down to the semicolon, on the ground that the same is immaterial and irrelevant to a cause of action for specific performance against the defendant corporation.
(20) Specially, to the following part of paragraph 20, "but so it is said defendants have repeatedly insisted on and demanded further changes in the boundaries of the tracts which were authorized to be conveyed by said resolutions," in that said alleged further changes are not itemized or specified as to content and as to the time when demanded.
(21) Specially, to paragraph 32, on the ground that said allegations are immaterial and irrelevant in that same have no connection with the cause of action sued upon. Said transaction with respect to said deed to Guy Mankin is isolated and separated from the other transactions sued on and without any connection whatever.
(22) Specially, to the allegations of paragraphs 36 and 19 with respect to said alleged combination and agreement among the individual defendants, and with respect to said allegations of confederation and conspiracy, in that the same do not set forth any alleged combination to do something that is unlawful, oppressive, *Page 132 
or immoral, nor a combination to do something that is not unlawful, oppressive or immoral by unlawful, oppressive, and immoral means.
On the hearing of the demurrer of the defendants on December 20, 1947, Hon. E. E. Andrews, Judge of Fulton Superior Court, entered an order and judgment as follows:
"The grounds of demurrer as set forth in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 20, and 22 of defendants' demurrer to plaintiff's petition are hereby overruled.
"The grounds of demurrer as set forth in paragraphs 11, 12, 14, 15, 16, 17, 18, 19, and 21 of defendants' demurrer to plaintiff's petition are hereby sustained, and the plaintiff is hereby allowed twenty (20) days within which to amend his petition to meet said grounds of demurrer."
To so much of this order as overruled paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 20, and 22 of the defendants' demurrer, the defendants duly excepted pendente lite, and properly assigned error thereon in the main bill of exceptions.
Within the extended time allowed for amendment, the plaintiff offered an amendment to his petition, substantially as follows:
(1) The agreement referred to in paragraphs 10, 11, 13, and 14 of the original petition is the agreement of the plaintiff and the defendants as set forth and alleged in paragraphs 8, 9, and 15 of the original petition. Prior to the purchase and acquisition by Blue Heron Lake Inc. of the property referred to in paragraph 6 of the original petition, and during the months of June and July, 1941 (the exact dates being unknown to the plaintiff as he has no record of them and cannot recall the specific dates), the plaintiff and individual defendants, to wit, Dr. Randolph Smith, Mrs. Helen Douglas Mankin, and Guy Mankin, held two or three troup [group] meetings (the exact number the plaintiff does not recall and he has no record of them); and at these meetings it was agreed between the plaintiff and said parties that, as soon as said property was purchased and acquired by Blue Heron Lake Inc., the several tracts of land described in exhibit "A" of the original petition would be conveyed by the corporation to the parties, respectively, as set forth and reflected by said exhibit. The said negotiations and agreement of the plaintiff and said individual defendants were subsequently merged into the *Page 133 
agreement alleged in paragraphs 8, 9, and 15 of the original petition.
(2) The improvements alleged in paragraphs 11 and 12 of the petition (or the substantial part thereof) were made subsequently to September 18, 1942, and during the years 1942, 1943, and 1944. Said improvements consisted of: (a) the dredging of a cove; (b) the construction of a heavy stone wall around said cove, 4 feet high and 150 feet in length; (c) the building of a sand beach around said cove; (d) the construction of a stone boathouse of two-boat capacity; (e) the dredging and cleaning of a large spring of a reservoir capacity of 1000 gallons; (f) the construction of a stone enclosure of said spring; (g) the construction of a stone floor around said spring; (h) the erection around said spring of an ornamental staggered wall; (i) the erection (within the vicinity of said spring) of a rustic, umbrella-type summer house with circular stone floor 16 feet in diameter; (j) the construction of a barn with two stables, two cribs, and a loft; (k) the erection of a double frame garage, with stone foundation wall. A detail of the costs of said improvements is hereto attached and marked exhibit "X." All of said improvements were substantial, permanent, and valuable. (Exhibit X is as follows: "September 1942, $67.18; November 1942, $87.93; December 1942, $77.05; January 1943, $75.99; February 1943, $106.59; March 1943, $129.76; April 1943, $114.84; May 1943, $136.89; June 1943, $80.02; August 1943, $28.40; September 1943, $31.70; November 1943, $4.50; December 1943, $5.30; January 1944, $9.65; February 1944, $27.00; March 1944, $150.00; June 1944, $245.06; July 1944, $25.00; August 1944, $80.00; August 1944, $100.00; September 1944, $97.55; October 1944, $91.00; November 1944, $115.90; December 1944, $17.85. — Total $1905.10 [$1905.16]. After Blue Heron Lake Inc. acquired the property referred to in paragraph 6 of the original petition on or about August 22, 1941, and prior to September 18, 1942, the plaintiff expended $1500 in landscaping the tract of land set forth in exhibit "A" of the petition as `tract of Curtis H. Bryant,' and in preparation for the building of the cove and boathouse referred to in paragraph 2 of the aforesaid amendment to the original petition.")
(3) As to the demands for the execution of the deed alleged in paragraphs 14 and 17 of the original petition, the plaintiff *Page 134 
avers that he made a specific demand on said defendants at the annual meetings of the stockholders and directors of the defendant corporation on September 18, 1942, and also at said meetings held on September 18, 1943, and also at the adjourned meetings of the stockholders and directors of said corporation on January 19, 1945. Said meetings were held at the offices of Mrs. Mankin in Atlanta, Georgia, and the demands were made at said offices during said meetings. On February 24, 1945, the plaintiff made a specific demand on Mrs. Mankin for the execution and delivery of said deed. This demand was made near and in the vicinity of the home of the plaintiff on Dixie Lake No. 1. Various other demands were made on Mrs. Mankin (secretary and attorney for the corporation) to prepare said deed for execution. Some of said demands were made over the telephone to Mrs. Mankin at her office in Atlanta, and some of them were made in person to Mrs. Mankin at Union City, Georgia. Said demands were made during the years 1943, 1944, and 1945, but the exact dates are unknown to the plaintiff as he kept no record of them, and he does not recall the exact dates.
(4) The plaintiff amends paragraph 16 of his petition by alleging: The improvements alleged in said paragraph 16 consisted of: planting four camellia bushes at a cost of $60; planting twelve rhododendron bushes at a cost of $36; planting six pyracantha bushes at a cost of $9; the construction of a retaining wall at a cost of $124; stone surfacing and graveling driveway at a cost of $127.65; and the thinning and pruning of forest trees at a cost of $75. Said improvements were made during the years 1945 and 1946 and subsequently to January 19, 1945. Said improvements were substantial, permanent, and valuable.
(5) The plaintiff amends paragraph 32 of said petition by alleging that the said alleged consideration of $75 per acre for said land was inadequate and was part of the fraudulent scheme and plan of said defendants to acquire the property owned by the corporation for an inadequate consideration, and to the injury of the corporation and to the injury of the plaintiff who is a one-third owner in said corporation. That the property deeded was of the value of $500 per acre, and it would be inequitable and unjust to allow said conveyance to stand for the inadequate consideration of $75 per acre. *Page 135 
This amendment was allowed subject to demurrer and objection and ordered filed as part of the record, whereupon the defendants filed their renewed and amended demurrer and motion to strike upon the grounds:
(1) The defendants renew each and every ground of the demurrer heretofore filed, including general and special, to the petition as amended by the amendment filed January 19, 1948.
(2) The defendants demur to the petition as amended on the ground that the same sets forth in one count two alleged causes of action, i.e., a bill for specific performance of contract for the transfer of real estate and a minority-stockholder's bill against majority stockholders, charging fraud and conspiracy.
(3) The defendants demur to the petition as amended and move to strike the petition on the ground that the same sets forth two alleged causes of action, i.e., a bill for specific performance of contract for the transfer of real estate and a minority-stockholder's bill against majority stockholders, charging fraud and conspiracy, the former of which is based on contract and the latter of which is based on tort, and which two alleged causes of action cannot be joined together in the same petition. The petitioner should be required to elect, and strike from the petition all allegations referable to the cause of action which he does not elect to pursue. The defendants move to dismiss the petition in the absence of such election by the petitioner.
(4) The defendants demur specially and move to strike the second sentence of paragraph 1 of said amendment, filed January 18, 1948, on the ground that the same is immaterial and irrelevant, in that there is no allegation that said alleged agreement was made a part of the application for charter of the defendant, Blue Heron Lake Inc., as is required in the case ofMeeks v. Seawell, 198 Ga. 817 (33 S.E.2d 150). Since said agreement was not included in the charter, the same is not binding on the corporation or any of the parties to said alleged agreement, and is therefore immaterial and irrelevant.
(5) The defendants demur specially to and move to strike the third sentence of paragraph 1 of said amendment, filed January 19, 1948, on the ground that said sentence is a conclusion of the pleader without facts to support the same, in that the word "merged" is indefinite and ambiguous and without any basis in *Page 136 
fact indicating its clear and true meaning. The alleged said negotiations and agreements of the plaintiff and the individual defendants, being utterly immaterial and irrelevant, cannot be the basis for any merger into the alleged agreement set forth in paragraphs 8, 9, and 15 of the original petition.
(6) The defendants demur specially to and move to strike paragraph 2 of said amendment, filed January 19, 1948, on the ground that the value of each of said alleged improvements is not set forth or itemized along with each of said alleged improvements. Paragraph 11 of the original demurrer, which was sustained by the court, requires that said value of each of said alleged improvements be itemized, and that said itemization should refer to each of the items involved, so that opposite each specified improvement shall appear the value or cost of said improvement.
(7) The defendants demur specially to and move to strike paragraphs 2 and 4 of said amendment, filed January 19, 1948, on the ground that the date of each of said alleged improvements is not set forth. The defendants request the date, and not merely the year, when each of said alleged improvements was made, because said date is necessary to the defendants in the preparation of their defense.
(8) The defendants demur specially to the fifth, sixth, and seventh sentences of paragraph 3 of said amendment, filed January 19, 1948, which sentences complained of are as follows: "Various other demands were made on Mrs. Mankin (secretary and attorney for the corporation) to prepare for execution said deed. Some of said demands were made over telephone to Mrs. Mankin at her office in Atlanta, and some were made in person to Mrs. Mankin at Union City, Georgia. Said demands were made during the years 1943, 1944, and 1945, but the exact dates are unknown to plaintiff as he kept no record of them, and he does not recall the exact dates" — on the ground that said allegations are too indefinite to inform the defendants concerning the time said alleged demands were made.
(9) The defendants demur specially to and move to strike paragraph 5 of said amendment, filed January 19, 1948, on the ground that said allegations are immaterial and irrelevant, in that the same have no connection whatsoever with the cause of *Page 137 
action sued upon. Said transaction with respect to said deed to Guy Mankin is isolated and separated from the other transactions sued upon and without any connection whatsoever. Paragraph 32 of the original petition, which set forth said Guy Mankin transaction, was stricken in the order of December 22, 1947, in its entirety, by the sustaining of ground 21 of the defendants' demurrer on the same grounds herein set forth.
Upon the hearing of this demurrer, on June 25, 1948, Honorable Ralph H. Pharr, Judge of Fulton Superior Court, entered an order and judgment overruling the 2d 3rd, 6th, and 7th grounds of demurrer and sustaining the 4th, 5th, 8th, and 9th grounds thereof.
To the judgment of the court overruling grounds 2, 3, 6, and 7 of the demurrer, the defendants duly excepted pendente lite, and error is assigned thereon in the main bill of exceptions. Subsequently, the defendants moved the court to reconsider its judgment of June 25, 1948, and to sustain grounds 6 and 7 of the demurrer to the amended petition rather than overrule the same, which motion the trial court denied, and to this judgment the defendants duly excepted pendente lite, and in the main bill of exceptions assign error thereon.
On June 27, 1949, Judge Pharr entered a further order as follows:
"It appearing to the court that it did not pass on the renewed demurrers contained in paragraph 1 of the demurrers filed February 5, 1948, and, it further being the opinion of the court that the law of these general and special renewed demurrers was determined by the order of Judge Andrews, dated December 20, 1947:
"It is, therefore, ordered that the renewed demurrers contained in paragraph 1 of the renewed demurrers, both general and special, filed February 5, 1948, to the petition as amended, be and are hereby overruled, except ground 21 of the original demurrer (to paragraph 32 of petition) which is sustained."
To this judgment the defendants also except.
The plaintiff by cross-bill of exceptions assigns error upon his exceptions pendente lite, complaining of the ruling of the trial court sustaining grounds 4, 5, 8, and 9 of the demurrers to the petition as amended; and he also assigns error upon the final *Page 138 
order sustaining ground 21 of the original demurrer, attacking paragraph 32 of the original petition, which demurrer was renewed by ground 1 of the demurrer to the petition as amended. In the brief of counsel for the plaintiff, the assignments of error in the cross-bill of exceptions, complaining because the court sustained ground 9 of the defendants' renewed demurrer and ground 21 of the original demurrer striking paragraph 5 of the plaintiff's amendment and paragraph 32 of the original petition, are withdrawn.
1. The defenses of multifariousness and duplicity are not favored by courts of equity. City Bank of Macon v. Bartlett, 71 Ga. 797;Martin v. Brown, 129 Ga. 562, 568 (59 S.E. 302);Bridges v. Donalson, 165 Ga. 228, 231 (140 S.E. 497). "A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others." Blaisdell v. Bohr, 68 Ga. 56 (2). The trial court properly held in this case that the primary relief sought by the plaintiff is specific performance as to the conveyance of certain lands under the resolutions of the stockholders and directors of the defendant corporation, passed on September 18, 1942, and referred to in paragraphs 8 and 9 of the original petition as modified by the subsequent resolutions passed on January 19, 1945, and referred to in paragraph 15 of the original petition; and that all of the prayers of the petition are incidental to that, and the relief sought thereby is to obtain such specific performance and make the same effective as good title to the property involved. As stated by the trial court, the petition seeks: (a) an injunction to prevent the defendants from putting into effect a different division of the property from that sought to be enforced by specific performance, and to enjoin any change in the status of the corporation or the property pending the granting of specific performance: (b) specific performance of the resolutions by awarding to the plaintiff certain property described in the exhibit attached to the petition; (c) specific performance of the alleged resolution *Page 139 
by the award to the individual defendants of the properties which the plaintiff contends they should receive thereunder; and (d) the cancellation of certain deeds by the corporation to the plaintiff and the defendants, which would interfere with the specific performance of the resolutions, if the plaintiff is entitled thereto, and necessarily all of the defendants are proper parties in an action seeking to cancel deeds from the corporation to the individual defendants. Miller v. Watson,139 Ga. 29, 33 (76 S.E. 585); Hines v. Wilson, 164 Ga. 888
(139 S.E. 802); Keeter v. Bank of Ellijay, 190 Ga. 525,526 (9 S.E.2d 761). in the petition, a different ruling might be required, but with these allegations stricken, the petition is not multifarious.
2. Nor is the petition subject to the demurrer on the ground that it is duplicitous. While it is insisted by the defendants that the petition is duplicitous because the plaintiff by his petition is seeking to enforce against the corporation: (1) an agreement between the incorporators, made before a charter was applied for, and not incorporated in the charter of the corporation subsequently granted; (2) the specific performance of the resolutions of the stockholders and directors passed subsequently to the organization of the corporation; and (3) to maintain a minority-stockholder's suit against the majority stockholders under Code § 22-711 — this contention is not well founded. The trial court properly sustained paragraphs 4 and 5 of the defendants' demurrer to so much of paragraph 1 of the amendment to the petition as sought to allege an agreement or contract between the plaintiff and the individual defendants, entered into between them before the charter of the defendant corporation was applied for, and which was not made a part of the application for charter. Meeks v. Seawell, 198 Ga. 817
(33 S.E.2d 150). As already stated, the trial court properly construed this petition to be an action for specific performance as to the conveyance of certain lands under the resolutions of the stockholders and directors of the corporation, passed subsequently to its organization; and the allegations of the petition with reference to *Page 140 
the alleged fraud and conspiracy on the part of the individual defendants as majority stockholders of the corporation are for the purpose of showing a breach by the corporation of the resolutions to convey, and the alleged reason therefor, and not for the purpose of setting up a separate cause of action for fraud and conspiracy by majority stockholders under Code § 22-711. The petition is not duplicitous, and does not in one count set forth two alleged causes of action, and does not contain a misjoinder of causes of action. Hartley v. Hartley,198 Ga. 294 (31 S.E.2d 655); Orr v. Cooledge, 117 Ga. 195
(3) (43 S.E. 527); Atlantic Coast Line R. Co. v.Inabinette, 32 Ga. App. 246 (122 S.E. 902); Grant v.Hart, 192 Ga. 153, 155 (4) (14 S.E.2d 860).
3. The trial court properly ruled that paragraph 2 of the plaintiff's amendment sufficiently complied with the requirements of paragraph 11 of the original demurrer to paragraphs 11 and 12 of the original petition, relating to the valuable improvements alleged to have been made by the plaintiff upon the property here involved. That demurrer was based upon the ground that paragraphs 11 and 12 of the original petition were insufficient because the said alleged valuable improvements and the date and alleged value of each of same are nowhere itemized or specified; and paragraph 6 of the demurrer to the petition as amended is based upon the ground that the value of each of said alleged improvements is not set forth or itemized along with each of said alleged improvements. The petition, as amended, alleges that substantial and valuable improvements were made by the plaintiff upon the lands in question subsequently to and in reliance upon the resolutions of the stockholders and directors, and has described in paragraph 2 of the amendment each item of the improvements alleged to have been made, and has itemized in exhibit "X" attached thereto the expenditures made therefor month by month. Such minuteness of detail as the day of the month and hour of the day that such improvements and expenditures were made is not required by the rules of pleading. The trial court did not err in overruling paragraphs 6 and 7 of the demurrer to the petition as amended, and in overruling the motion to reconsider such judgment and to sustain rather than overrule the said demurrer. *Page 141 
4. Paragraphs 14 and 17 of the original petition alleged that the plaintiff had made repeated demands upon the defendants for the preparation and execution of deeds conveying the properties in accordance with the resolutions of the stockholders and directors of the corporation, relied upon by the plaintiff. These allegations were demurred to by paragraphs 12 and 15 of the original demurrer, upon the ground that the time and place of such demands were not specified. These grounds of the original demurrer were sustained, with the right in the plaintiff within the time there provided — which was later extended — to amend his petition to meet the same. Paragraph 3 of the amendment to the petition alleges that demands were made at the meetings of the stockholders and directors of the defendant corporation held on September 18, 1942, September 18, 1943, and January 19, 1945; and that a specific demand was made upon the defendant, Mrs. Mankin, on February 24, 1945, near and in the vicinity of the home of the plaintiff. These allegations were sufficient to meet grounds 12 and 15 of the original demurrer. The trial court did not err in sustaining ground 8 of the demurrer to so much of paragraph 3 of the amendment to the petition as alleged: "Various other demands were made on Mrs. Mankin (secretary and attorney for the corporation) to prepare for execution said deed. Some of said demands were made over telephone to Mrs. Mankin at her office in Atlanta and some of them were made in person to Mrs. Mankin at Union City, Georgia. Said demands were made during the years 1943, 1944, and 1945, but the exact dates are unknown to plaintiff, as he kept no record of them and he does not recall the exact dates" — upon the ground that said allegations are too indefinite to inform the defendants concerning the time said alleged demands were made.
5. The special grounds of the demurrer not specifically dealt with are either without merit, or were met by amendment to the petition.
6. We come now to a consideration of the general demurrer, and the question of whether the petition stated a cause of action for specific performance. As will appear by reference to paragraphs 8, 9, and 15 of the original petition, the plaintiff alleged: that on the dates therein specified the defendant corporation, by and through the resolutions adopted by the stockholders and *Page 142 
directors, agreed to convey to the plaintiff and to the individual defendants named the particular tracts of property described in the exhibits attached to the petition; that, relying upon these resolutions, the plaintiff and the individual defendants went into possession of the tracts of land to be conveyed to them, respectively, and made valuable improvements thereon, and as we have heretofore held in division 3 of this opinion, the plaintiff alleged with sufficient particularity the nature and character of the improvements made by him and the value or cost thereof. It is contended by counsel for the defendants that the alleged resolutions were not binding upon the corporation because no consideration appears therefor. With this contention we cannot agree. Code § 37-804 provides: "Specific performance will not be decreed of a voluntary agreement or merely gratuitous promise. If, however, possession of lands has been given under such agreement, upon a meritorious consideration, and valuable improvements made upon the faith thereof, equity will decree the performance of the agreement."
In the brief of counsel for the plaintiffs in error it is conceded that the act of a corporation in distributing corporate property to its stockholders by majority vote (and in this case, as alleged by the plaintiff, by unanimous vote) of its stockholders and directors is an intra vires act on the part of the corporation. As pointed out in Porter v. Allen, 54 Ga. 623, it is not essential that there be a valuable consideration for such agreement but, by the terms of the Code section above quoted, it is only necessary that there be a "meritorious consideration." In that case it was said that value realized by the donor collaterally in other transactions, either from the donee or her kindred, would be regarded only insofar as it may have contributed to form in the donor a motive to the gift, or in the donee some meritorious claim upon the donor's bounty. InMilton v. Milton, 192 Ga. 778 (16 S.E.2d 573), it was held that a petition under the Code, § 37-804, for specific performance of a promise to convey land, to be sufficient as against demurrer, "must definitely allege: (1) the promise to give, (2) a meritorious consideration, (3) possession in his own right by the donee, and (4) the making of valuable improvements." It was there held that the natural love and affection of a father for his son supplies the element of meritorious *Page 143 
consideration (citing Payne v. Thebault, 180 Ga. 758 (4)180 S.E. 725). See also Milton v. Milton, 195 Ga. 130
(23 S.E.2d 411).
In the petition in this case, it is alleged in paragraph 10 that the consideration for said conveyances was the mutual benefits flowing to said stockholders, and by paragraph 12 it is alleged that the improvements made by the plaintiff "have greatly enhanced the value of the entire property of said corporation." Moreover, the Code, § 20-302, provides: "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." In Tompkins v.Philips, 12 Ga. 52, this court held: "1. Any benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, him to whom it is made, is sufficient consideration, in the eye of the law, to sustain an assumpsit. 2. Damage or trouble to the promise, as well as benefit to the promisor, is a sufficient consideration to support a promise." See also Lanier v. Council, 179 Ga. 568
(176 S.E. 614); R. A. C. Realty Co. v. W. O. U. F. AtlantaRealty Corp., 205 Ga. 154, 164 (52 S.E.2d 617). The plaintiff alleges that, relying upon the promise of the corporation to convey to him the property described, he went into possession thereof and made valuable improvements thereon to the extent of approximately $3500. It thus appears that the petition alleges a benefit to the corporation which made the promise, by reason of the enhancement in value of its remaining property, because of the valuable improvements made by the plaintiff, and an injury to the plaintiff, who received the promise by reason of the valuable improvements thus made by the plaintiff in reliance upon the promise. We hold that, under all of these facts, a "meritorious consideration" is shown for the promise. The petition, therefore, alleges every element to support an action for specific performance under the provisions of the Code, § 37-804, viz.: (1) the promise to convey; (2) a meritorious consideration, (3) an entry by the plaintiff into possession in pursuance of the promise, and (4) that on the faith thereof he made valuable improvements. Milton v. Milton, 195 Ga. 130
(supra). The plaintiff's right of action for specific performance is not precluded by reason of the allegations of the petition with respect to the alleged confederation *Page 144 
and conspiracy on the part of the individual defendants, as majority stockholders of the corporation, to breach the promise. While these allegations might be appropriate to a minority stockholder's suit against majority stockholders under the provisions of Code § 22-711, they are not thereby rendered inappropriate here to show a breach of the promise to convey on the part of the corporation and the reasons therefor. The petition stated a cause of action, and the trial court did not err in overruling the general demurrer thereto.
7. The assignments of error in the cross-bill of exceptions by the plaintiff, complaining of the ruling of the trial court sustaining ground 21 of the original demurrer to paragraph 32 of the original petition and ground 9 of the renewed demurrer to paragraph 5 of the amendment to the petition, are withdrawn and abandoned by counsel for the plaintiff in their brief, and under the ruling made in division 4 of the opinion the other assignment of error in the cross-bill is without merit.
Judgment affirmed on main and cross-bills of exceptions. Allthe Justices concur.